**UNITED STATES, Appellee,**

v.

**Vincent D. SPINOSA, Defendant, Appellant.**

**No. 91–2125.**

United States Court of Appeals, First Circuit.

Heard Nov. 2, 1992.

Decided Dec. 15, 1992.

---

Charles W. Rankin, with whom Margaret H. Carter, and Rankin & Sultan, Boston, MA, were on brief for appellant.

Paula J. DeGiacomo, Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., Boston, MA, was on brief for appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, SELYA, Circuit Judge.

BOWNES, Senior Circuit Judge.

Vincent D. Spinosa was convicted by a Massachusetts federal jury of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Spinosa urges this court to reverse his conviction on the grounds that the trial court erred in: (1) denying Spinosa's motion for a hearing to suppress evidence under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); (2) denying Spinosa's motion to exclude prior "bad acts" evidence; (3) admitting documentary and testimonial evidence concerning Spinosa's telephone records; and (4) denying Spinosa's motion for a "missing witness" instruction. We affirm.

## I.

### Background

We begin with an overview of the facts of the case.[1] In the six-month period between August 8, 1990 and January 28, 1991, Special Agent Damian "Pete" Farley conducted an undercover drug trafficking investigation in the Boston, Massachusetts area. Cole Porter, a government informant, introduced Farley to Jeffrey Katz as a drug dealer looking to buy cocaine. Farley made a preliminary purchase of four ounces of cocaine from Katz. Over the course of the following months, Farley entered negotiations with Spinosa and Jeffrey Katz for further cocaine purchases. Eighteen of Farley's secretly tape recorded telephone and face-to-face conversations with Spinosa and Katz were introduced into evidence at trial. Those recordings, along with the testimony of Farley and Katz, who cooperated with the government following his arrest, served as the backbone of the government's case against Spinosa.

In October, 1990, Spinosa told Farley that he had a cocaine supplier in New York and that he could get a kilo of cocaine to sell to Farley. Spinosa told Farley first in early November, and then again in December, that he was having trouble getting the cocaine as promised. Later in December, Spinosa told Katz that he could get the cocaine for Farley from a friend who had a New York connection.

On January 15, 1991, Spinosa called Katz and told him that another friend, Richard Kameese, had brought cocaine from New York and asked if Katz could pick it up. Before that deal could be completed, however, Kameese was hospitalized as a result of a drug overdose. Subsequently, Spinosa told Katz that he could get another kilogram of cocaine from Kameese's sources in New York. On January 24, Spinosa told Katz that he had received one kilogram of cocaine from New York and that it would take one day to make final arrangements for the deal with Farley. That day, Katz called Farley and told him that they were prepared to make the cocaine deal. After negotiating the price for one kilo at $30,000, they agreed to meet on January 28 in the parking lot of Friendly's Restaurant in Wareham.

On January 28, 1991, Katz called Farley and told him that he and Spinosa would meet Farley and Porter at Friendly's Restaurant. Spinosa and Katz "cut" the cocaine in Spinosa's bedroom by replacing eight ounces of cocaine with inositol. Katz observed Spinosa put the remaining eight ounces of cocaine above his ceiling. That afternoon, Spinosa drove Katz to Friendly's and helped check for police surveillance by

---

1. We present the facts in the light most favorable to the government which prevailed below. *United States v. Newton*, 891 F.2d 944, 946 n. 2 (1st Cir.1989) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Sturm*, 870 F.2d 769, 770 (1st Cir.1989); *United States v. Medina*, 761 F.2d 12, 16 n. 3 (1st Cir.1985)).

driving up and down the lanes of the parking lot. At approximately 2:30 p.m., Katz entered Farley's car and showed him one kilogram of cocaine. Subsequently, inside the restaurant, both Spinosa and Katz were arrested by a team comprised of federal, state and local law enforcement officers. After his arrest, Katz told Drug Enforcement Administration agents that earlier that day he had seen approximately eight ounces of cocaine and marijuana in the ceiling of Spinosa's bedroom at 284 Hovendon Avenue in Brockton, Massachusetts.

## II.

### Motion to Suppress Evidence

A. *Facts.*

 On January 29, 1991, law enforcement officers appeared before a United States Magistrate to apply for a search warrant for Spinosa's residence at 284 Hovendon Avenue in Brockton, Massachusetts. The warrant application was supported by an affidavit provided by Drug Enforcement Administration (DEA) Special Agent Vincent Burch, which stated in pertinent part:

2. On or about August 8, 1990 Special Agent Damian Farley, acting in an undercover capacity, began negotiating with Jeffrey KATZ ... regarding the purchase of cocaine.

3. On August 8, 1990, KATZ had delivered to Special Agent Farley approximately four ounces of cocaine in the parking lot outside of Matt Garrett's Restaurant in Brockton, Massachusetts. Special Agent Farley gave KATZ $4,800 in cash in exchange for the cocaine.

4. During the past several months since August 8, 1990, Special Agent Farley has met with and engaged in numerous telephone conversations with KATZ and Vincent SPINOSA ... concerning additional purchases of cocaine. Several of Special Agent Farley's discussions ... with KATZ and SPINOSA were tape recorded. *During the course of these discussions, KATZ and SPINOSA indicated to Special Agent Farley that they were working together in the cocaine business.*

5. On several occasions between August 8, 1990 and January 28, 1991, Special Agent Farley discussed with KATZ and Vincent SPINOSA arrangements for the purchase of kilogram quantities of cocaine by Special Agent Farley. *On or about January 15, 1991, KATZ related to Special Agent Farley that he was in possession of or had access to one kilogram of cocaine and that KATZ and SPINOSA would meet Special Agent Farley and sell him the kilogram of cocaine for $30,000.* Further, KATZ indicated that he would be with SPINOSA when he delivered the cocaine. They agreed that the meeting location would be at the Friendly's Restaurant in Wareham, Massachusetts.

6. On January 28, 1991, at approximately 2:30 p.m., DEA agents observed SPINOSA and KATZ in a burgundy (with black top) Ford Marquis in the vicinity of the Friendly's Restaurant in Wareham. A short time later, SPINOSA and KATZ drove and parked in the Friendly's Restaurant parking lot near Special Agent Farley. After entering the lot, KATZ got out of his vehicle carrying a brown paper bag and entered the vehicle occupied by Special Agent Farley. Once inside the vehicle, KATZ revealed to Special Agent Farley a one kilogram package containing a white powdery substance that later field tested positive for the presence of cocaine.

7. Special Agent Farley and KATZ then exited the vehicle and proceeded inside the Friendly's Restaurant. At this time, KATZ and SPINOSA were placed under arrest by DEA, Massachusetts State Police, Wareham, Massachusetts[ ] Police Department and the Brockton, Massachusetts[ ] Police Department.

8. Following his arrest on January, 28, 1991, KATZ stated to DEA agents that on January 28, 1991 he observed approximately eight ounces of cocaine and a quantity of marijuana in the ceiling of SPINOSA's bedroom at 284 Hovendon Avenue in Brockton, Massachusetts.

9. Based on the foregoing and my experience in conducting drug investiga-

tions, in my opinion probable cause exists to believe that cocaine, marijuana, and drug ledgers, papers, notes, and other documents exist in the premises at 284 Hovendon Avenue in Brockton, Massachusetts.

(Emphasis added.) The magistrate issued the warrant, which was executed later that day. In the course of the search, DEA agents seized a triple beam balance scale, bindle papers, a piece of paper with Cole Porter's telephone number written on it and over $5,000. Spinosa moved to suppress this evidence on the grounds that: "(1) the search warrant was defective because the affidavit on which it was based did not establish probable cause for the search; and (2) the affidavit contains misrepresentations and omissions of material facts intentionally or recklessly made."

With respect to his first assertion, Spinosa claims that Katz's accusation was not sufficiently substantiated to establish probable cause and that Katz's statements should have been viewed merely as an attempt to curry favor with the government. For the purpose of analyzing whether sufficient cause existed, the trial judge disregarded that part of the fifth paragraph of Burch's affidavit which stated that: "On or about January 15, 1991, Katz related to Special Agent Farley that he was in possession of or had access to one kilogram of cocaine and that Katz and Spinosa would meet Special Agent Farley and sell him the kilogram of cocaine for $30,000." The court did so because, during the suppression hearing, the government conceded that the statement was inaccurate. In fact, the government admitted that it had learned this information from Porter, the informant working with Farley on his undercover operation, a few days after January 15.

The court further "revised" the affidavit to assume three things that were omitted from Burch's affidavit: (1) when Katz negotiated the deal with Farley, he said that Spinosa had nothing to do with the transaction; (2) Katz was a liar; and (3) Katz would do anything to avoid jail, including committing murder and fleeing. The first point was assumed because, in the course of a January 15 taped conversation with Farley concerning the negotiation of the drug deal, Katz uttered the phrase, "it's nothing to do with Vinny." The court assumed that Katz was a liar because of the incentive he had to shift responsibility to Spinosa after being arrested for making a hand-to-hand sale of one kilo of cocaine to a DEA agent. Finally, the court assumed that Katz would do anything to avoid jail because he told an informant in August that if Farley was a cop, Katz would shoot him in the head.[2]

With respect to his second claim, Spinosa contends that Burch's affidavit included material misleading misrepresentations and omissions, including: (1) the conceded error in the fifth paragraph of Burch's affidavit; (2) the final sentence of the fourth paragraph of the affidavit, which stated that "Katz and Spinosa indicated to Special Agent Farley that they were working together in the cocaine business;" and (3) the three omitted facts discussed above. Spinosa moved for a *Franks* hearing on the basis of these alleged errors in the affidavit. The court below denied his motion.

■ We review the lower court's determinations concerning the affidavit's sufficiency for clear error. *United States v. Nocella*, 849 F.2d 33, 39 (1st Cir.1988) (citing *United States v. Aguirre*, 839 F.2d 854, 857 (1st Cir.1988); *United States v. Figueroa*, 818 F.2d 1020, 1024 (1st Cir.1987)).

### B. Sufficiency of the Affidavit.

■ It is clearly established that an affidavit serving as the basis for issuance of a search warrant "is sufficient when it 'demonstrates in some trustworthy fashion

2. The same day, Katz was tape-recorded telling Farley:

I mean that's the first time, that's the second time I, I don't even care about myself because I know [not audible] that puts me in jail, I have my family which totally stick behind me. I'd get out on bail and I'd go. I'd be on America's Most Wanted for murder. I wouldn't even, it wouldn't phase me cause I don't even care. I don't, I don't even fucking care about life right now. It don't even, it don't even phase me. No one phases me, I walk, I talk and I do what I want.

the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it.'" *Nocella,* 849 F.2d at 39 (quoting *Aguirre,* 839 F.2d at 857–58). To determine whether the government has made a sufficient showing of probable cause, we must take into account the "totality of the circumstances," *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), and examine, *inter alia,* the veracity and reliability of any informants, and the basis of their knowledge. *See, e.g., United States v. Bucuvalas,* 970 F.2d 937, 940 (1st Cir.1992); *Nocella,* 849 F.2d at 39; *Figueroa,* 818 F.2d at 1024; *United States v. Ciampa,* 793 F.2d 19, 22 (1st Cir.1986). The affidavit must be "viewed in its entirety," and "must be given a common-sense and realistic, rather than a hypertechnical interpretation." *United States v. Cochrane,* 896 F.2d 635, 637 (1st Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990) (citing *Massachusetts v. Upton,* 466 U.S. 727, 732–34, 104 S.Ct. 2085, 2087–88, 80 L.Ed.2d 721 (1984) (per curiam); *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331; *United States v. Calle–Cardenas,* 837 F.2d 30, 31 (1st Cir.), *cert. denied,* 485 U.S. 1024, 108 S.Ct. 1582, 99 L.Ed.2d 897 (1988); *Haefeli v. Chernoff,* 526 F.2d 1314, 1319 (1st Cir. 1975)). In evaluating the sufficiency of the affidavit, we give great deference to the judicial officer who concluded prior to issuing the warrant that a sufficient showing of probable cause had been made. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331; *Cochrane,* 896 F.2d at 637; *United States v. Drake,* 673 F.2d 15, 18–19 (1st Cir.1982).

Even after taking account of the errors of commission and omission of which Spinosa complained, the trial court affirmed the magistrate's determination that the affidavit contained sufficient cause to justify issuing a search warrant. We agree.

As "revised," Burch's affidavit indicated that: (1) Farley had met separately with Katz and Spinosa over the course of several months; (2) Farley had discussed with Spinosa plans for the purchase of kilogram quantities of cocaine by Farley; (3) Katz told Farley that he would be accompanied by Spinosa when he delivered the cocaine to Farley at the Friendly's Restaurant; (4) Spinosa drove Katz to the site of the drug sting; and (5) after his arrest Katz told DEA agents that he had personally observed cocaine and marijuana in the ceiling of Spinosa's bedroom.

Taken as a whole, the "revised" affidavit contained sufficient cause to justify issuing a warrant to search Spinosa's home for drugs and drug paraphernalia. Farley had met separately with Katz and Spinosa to arrange a drug deal. Katz told Farley that Spinosa would accompany him to the site of the ultimate exchange. Katz's reliability is supported by the fact that he and Spinosa did appear, as promised, with the kilo of cocaine. Given all this, the magistrate had sufficient information to infer that Katz's claim that he had personally seen contraband in Spinosa's bedroom on January 28 was credible. Such a credible statement of personal knowledge, in the context of the entire affidavit, constituted sufficient cause to support the issuance of a search warrant.

C. *Franks Hearing.*

■ On the basis of alleged misrepresentations and omissions in Burch's affidavit, Spinosa requested a *Franks* hearing. The district court denied the motion.

■ In *Franks v. Delaware,* the Supreme Court established the requirements for such a hearing:

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable

statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684 (footnote omitted). Material omissions may also serve as a basis for a *Franks* hearing. *United States v. Rumney,* 867 F.2d 714, 720 (1st Cir.), *cert. denied,* 491 U.S. 908, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989); *United States v. Paradis,* 802 F.2d 553, 558 (1st Cir.1986).

We need not decide whether the misrepresentations and omissions were made either knowingly or recklessly because, as the district court held, even had the affidavit been revised to reflect the misrepresentations and omissions of which Spinosa complains, there would nevertheless have been probable cause to issue the warrant. *See Rumney,* 867 F.2d at 720. We need only add a brief discussion of the alleged misrepresentation contained in the fourth paragraph of the warrant affidavit to the analysis in the preceding section of this opinion concerning the sufficiency of the "revised" affidavit.

In requesting a *Franks* hearing, Spinosa claimed, in addition to the allegations discussed above, that the final sentence of the fourth paragraph of the affidavit contained a misrepresentation. That sentence stated that "Katz and Spinosa indicated to Special Agent Farley that they were working together in the cocaine business." Spinosa claimed that there was never such an explicit statement made in any of the taped conversations; indeed, he argued that to the contrary there were several taped conversations in which Katz denied that Spinosa was involved in the cocaine transaction.

Spinosa's assertions may be correct. Even so, there was evidence which indicated that Katz and Spinosa were working together in the cocaine business. First, between October and December, 1990, Farley met with and engaged in numerous telephone conversations with Katz and Spinosa, both individually and together, to discuss the purchase of kilogram quantities of cocaine. Second, when Katz called Farley on the morning of January 28, he told him that Spinosa would accompany him to the site of the transaction. Finally, Spinosa did, in fact, drive Katz to the agreed upon meeting place where the deal was consummated and arrests were effected. Even if Katz and Spinosa did not explicitly indicate in words that they were working together in the cocaine business, they did so indicate by their actions. Spinosa's complaint regarding the fourth paragraph of the affidavit therefore adds nothing to his complaints discussed above. There was sufficient probable cause to issue the search warrant for Spinosa's residence. The district court did not err in refusing to grant a *Franks* hearing.

## III.

### *Prior Bad Acts*

The defense moved *in limine* to bar Katz's expected testimony that he and Spinosa had engaged in cocaine transactions during the four years prior to their arrest. The trial court denied the motion and allowed Katz's testimony under Fed.R.Evid. 404(b)[3] for the purpose of showing that Spinosa's involvement in Katz's cocaine

---

**3.** According to Fed.R.Evid. 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b) (amended 1991; effective December 31, 1991).

sale to Farley was not an accident or a mistake, which was Spinosa's anticipated defense.

 Evidence of prior bad acts is admissible if it survives two related tests: (1) the evidence must be relevant for a "special purpose," that is, to prove something other than bad character or propensity to commit crimes, and (2) the probative value of the evidence must "substantially outweigh" risks of prejudice, confusion, or waste of time. *United States v. Arias–Montoya*, 967 F.2d 708, 709–10 (1st Cir. 1992); *United States v. Ferrer–Cruz*, 899 F.2d 135, 137–38 (1st Cir.1990). A trial court's evidentiary ruling will only be reversed if we find abuse of discretion. *United States v. Hadfield*, 918 F.2d 987, 994–95 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991); *United States v. Newton*, 891 F.2d at 846; *United States v. Francesco*, 725 F.2d 817, 822 (1st Cir.1984).

 Katz testified that he had purchased cocaine from Spinosa, in quantities of between two and nine ounces, approximately thirty times. He also testified that he had seen cocaine and marijuana in Spinosa's bedroom on approximately two hundred occasions during the four years he had known him. Katz further testified that he had seen Spinosa with three kilograms of cocaine in his bedroom during the summer of 1990, just before their dealings with Farley began.

Spinosa's defense in this case was that he was not a knowing participant in Katz's sale of cocaine to Farley. He argued instead that he was merely doing Katz a favor by driving him to the site of the transaction because Katz's driver's license had been suspended. Katz's testimony directly contradicted that defense by indicating that Spinosa had been involved in a continuous pattern of cocaine possession and dealing for the four years immediately prior to the events which led to their arrests. *United States v. Wood*, 924 F.2d 399, 401 (1st Cir.1991) ("Evidence showing a pattern of involvement in previous drug distribution activity was admissible under Fed.R.Evid. 404(b) as evidence of his knowing participation in the charged scheme."). Katz's testimony was probative of the fact that Spinosa had both the knowledge of cocaine dealing and the opportunity to acquire a kilogram of cocaine necessary to participate in the sale to Farley. *United States v. Hadfield*, 918 F.2d at 994 (upholding admissibility of prior drug involvement in a drug trafficking case because the past actions were "proximate in time and closely allied with the type of crimes for which appellants were being tried"). Spinosa's prior bad acts are sufficiently similar to the crimes charged in this case, possession of cocaine with intent to distribute and conspiracy with Katz to commit the crime, to be probative of the fact that Spinosa was not merely an innocent driver who was involved in the transaction by accident. *United States v. Scelzo*, 810 F.2d 2, 4 (1st Cir.1987) (summarizing cases, "[w]e have thus held that evidence of similar past crimes or wrongful acts may be especially appropriate in conspiracy prosecutions."); *see also Arias–Montoya*, 967 F.2d at 712–13 (summarizing circumstances which would constitute "special relevance" including that prior bad acts (1) closely mirrored the newly charged crime, (2) were part of a common scheme or a course of continuous dealing, or (3) provided the context for the newly charged crime).

The probative value of Katz's testimony "substantially outweigh[ed]" its prejudice. As the trial court held, Katz's testimony was highly probative of Spinosa's knowledge and intent to participate in the cocaine deal with Farley and directly contradicts his defense that he was involved only by accident or mistake. Because the testimony links Spinosa to drug dealing, it is prejudicial. The testimony was not unfairly prejudicial, however, which is the test under Fed.R.Evid. 403.[4] It was highly probative of matters of special relevance in the

**4.** Fed.R.Evid. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

case: knowledge, intent, and lack of accident or mistake in cocaine dealing. *Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir.1987) (distinguishing unfair prejudice from probative evidence). Therefore, we hold that the trial court did not abuse its discretion by allowing Katz's testimony about Spinosa's prior involvement in drug transactions.

### IV.

#### Telephone Records Evidence

The government introduced into evidence records of calls placed from Spinosa's telephone. Spinosa contends that the trial court abused its discretion by denying: (1) his motion to strike testimony by Detective Kevin Walsh about certain telephone numbers which appeared in the records; and, (2) his request for a continuance after the court decided to allow the introduction of the records. Spinosa claims that he was unfairly prejudiced by these alleged errors and asks that we reverse his conviction. We disagree.

#### A. Detective Walsh's Testimony.

█ On the second day of trial, July 9, 1991, the government subpoenaed and received records documenting calls made from Spinosa's telephone. The next day, Detective Walsh testified that when he called three New York numbers which appeared on the January, 1991 records, he found that two of the numbers connected to paging devices ("beepers"), and that the third was disconnected. Defense counsel objected to that part of Walsh's testimony which related to the fact that the numbers connected to beepers, arguing that the testimony was irrelevant because the government had no evidence that those numbers were connected to beepers in January, 1991 when Spinosa placed the calls.

█ We reverse a trial court's rulings on relevance and admissibility of evidence only upon finding an abuse of discretion. *United States v. McCarthy*, 961 F.2d 972, 977 (1st Cir.1992); *United States v. Newton*, 891 F.2d at 946; *United States v. Coast of Maine Lobster Co., Inc.*, 557 F.2d 905, 908 (1st Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed.R.Evid. 401. "Evidence which is not relevant is not admissible." Fed.R.Evid. 402. To determine the relevance of evidence, we consider its probative value. That is, we examine its relationship to the elements of the offense and to any offered defenses. *United States v. Smith*, 940 F.2d 710, 713 (1st Cir.1991).

Walsh's testimony about the New York telephone numbers was offered to show that Spinosa had called drug dealers in January just before the sale to Farley. The government intended to show that beepers are often employed in the course of illegal drug activities. The government hoped that this testimony would buttress Farley's earlier testimony that Spinosa had told him that he had New York cocaine sources, and the anticipated testimony of Katz that Spinosa contacted New York sources to obtain the cocaine which was eventually sold to Farley.

Detective Walsh testified that six months had passed between January, when the telephone numbers were called from Spinosa's telephone, and July, when he called the numbers and found that two of the numbers connected to beepers. He also admitted that he had no information about who had subscribed to the numbers in January when they were called from Spinosa's telephone. The fact that the telephone numbers, when called in July, rang to beepers is, without more, not probative of any of the elements of the crime charged in this case.

Further, despite its offer of proof to the court, the government failed to elicit testimony to explain the relevance to drug dealing that two of the numbers connected to beepers rather than to standard telephones. Even had there been evidence showing that the numbers were connected to beepers in January, the fact that two of the numbers rang to beepers was not relevant in the

absence of an explanation of the special importance of beepers in the conduct of illegal drug activities. Therefore, Detective Walsh's testimony was irrelevant and should have been stricken.

■■■■■ The trial court's failure to strike Walsh's testimony was an abuse of discretion; therefore, we must continue our analysis to determine whether the error was harmless or warrants reversal of Spinosa's conviction. Because the government failed to raise the harmless error doctrine on appeal, we conduct the analysis *sua sponte.* 28 U.S.C. § 2111; Fed. R.Crim.P. 52(a); *United States v. Rodriguez Cortes,* 949 F.2d 532, 542–43 (1st Cir. 1991). "In determining whether or not error was harmless, a reviewing court must assess the record as a whole to determine the probable impact of the improper evidence upon the jury." *United States v. Mateos–Sanchez,* 864 F.2d 232, 237 (1st Cir.1988). Where, as here, the error is not of constitutional stature, we must decide whether "it can be said 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' " *United States v. Ladd,* 885 F.2d 954, 957 (1st Cir.1989) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)).

Other evidence at trial established that Spinosa had access to sources of cocaine in New York. Tape recordings of meetings and telephone calls involving Farley and Spinosa show that Spinosa claimed to have New York cocaine sources. Jeffrey Katz testified that Spinosa used his New York sources to obtain the cocaine sold to Farley in January. The telephone records and the testimony of Peter Abdow, the custodian of the records, established that calls were made from Spinosa's telephone to New York during the time immediately preced-

ing the sale of cocaine to Farley in January.

Detective Walsh's testimony about beeper numbers added little to the weight of evidence which established Spinosa's ties to New York drug connections. The other evidence of Spinosa's New York drug sources was strong enough to support a finding that he had such connections. There is no doubt that the irrelevant evidence that two of the numbers were connected to beepers in July had only a negligible impact on the weight of the evidence as a whole. Therefore, the trial court's failure to strike Detective Walsh's testimony was harmless.

### B. *Failure to Grant a Continuance.*

■■■■ In his opening statement, defense counsel said that Spinosa did not participate in the cocaine transaction between Katz and Farley. Rather, he stated that the evidence would show that Spinosa was involved only to the extent that he did a favor for Katz by driving him to the site of the transaction because Katz's driver's license had expired. On the second day of trial, as was discussed in the preceding section of this opinion, the government subpoenaed and received Spinosa's telephone records from the telephone company. The next day, defense counsel objected to the introduction of the records on the ground that the government had violated Rule 16 of the Federal Rules of Criminal Procedure and requested an immediate continuance in order to prepare an effective defense.[5] Although his brief fails to refer to the rule, we presume that Spinosa relies on Fed. R.Crim.P. 16(c) on appeal. He claims that the court's failure to grant the requested continuance was an abuse of discretion which prejudiced the presentation of his defense. We disagree.

■■■■ We review the trial court's determination of Rule 16 violations for abuse

---

5. Rule 16(c) provides as follows:
 If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, such party shall promptly notify the other party or that

other party's attorney or the court of the existence of the additional evidence or material. Fed.R.Crim.P. 16(c). If there is a violation of Rule 16, then the trial court may impose sanctions, including granting a continuance. Fed. R.Crim.P. 16(d).

of discretion. *United States v. Melucci,* 888 F.2d 200, 203 (1st Cir.1989). The burden rests with the party claiming a violation of Rule 16 to demonstrate resulting prejudice. *United States v. Formanczyk,* 949 F.2d 526, 530 (1st Cir.1991); *United States v. Hemmer,* 729 F.2d 10, 13 (1st Cir.), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). Spinosa argued at trial, and again on appeal, that the government had known since October, 1990, through Special Agent Farley, that Spinosa might have had a drug connection in New York, and that there was, therefore, no justification for the government's failure to subpoena such records prior to trial. In opposition, the government contends that it sought the telephone records in response to defense counsel's opening statement which, according to the government, suggested that Spinosa did not have a drug connection in New York. The government claims that because the records were sought in response to this new defense, it was not obliged to obtain and disclose the evidence prior to trial.

Without directly deciding whether the introduction of the telephone records violated Rule 16, the court offered to continue the case beginning the next day to allow preparation of a defense. When Spinosa pressed for immediate adjournment, the court overruled the objection and the trial resumed. Later that day, before Peter Abdow, the custodian of the telephone records, testified, Spinosa again raised objections to the telephone record evidence. The government offered to have Abdow testify later in the trial, thereby allowing the defense more time to prepare. Defense counsel did not respond to this suggestion, and the court denied the defense motion.

The defense has not explained what it would have done differently had its motion for an immediate continuance been granted. The telephone records reflected calls made from Spinosa's telephone and, therefore, presented no surprise to the defense. In addition, the defense has not explained what prejudice would have resulted from accepting the continuance as offered by the court, or from accepting the government's offer to delay calling the custodian of the telephone records. *United States v. Gladney,* 563 F.2d 491, 494 (1st Cir.1977) (finding no abuse of discretion by the trial court in admitting late disclosed evidence after offering a continuance). Accordingly, we find that the court below did not abuse its discretion by denying Spinosa's motion for an immediate continuance.

## V.

### *Missing Witness Instruction*

#### A. *Facts.*

■ Cole Porter was a government informant who introduced Farley to Katz, and served as a liaison for Farley, Spinosa and Katz. Katz testified that he and Porter had conversations in which they made arrangements regarding the cocaine transaction with Farley. The records of Spinosa's telephone calls indicated that Spinosa had placed several calls to Porter in the period immediately preceding the January 28 deal. In closing, the prosecutor implied that these records undercut Spinosa's defense that he merely drove Katz to the site of the transaction, and that they instead supported the government's contention that Spinosa was intimately involved in arranging the January 28 deal.

Spinosa claims that the trial judge made three errors with respect to Cole Porter. First, he contends that he should have been permitted to cross-examine Farley about his close relationship with Porter because, in the absence of such cross-examination, he was placed at a disadvantage in urging that the closeness of the government's relationship with Porter entitled him to a "missing witness" instruction. Second, he argues that the court should have granted his request for a "missing witness" instruction because the government failed to call Porter as a witness. Third, he asserts that he should have been permitted to argue, in closing, that the jury could draw an adverse inference from the government's failure to call Porter as a witness. The three arguments really boil down to one claim: that the court should have given the jury a "missing witness" instruction because the government failed to call a witness "favor-

ably disposed" to the government whose testimony would have been expected to be adverse to Spinosa.

■ We review the denial of Spinosa's request for a "missing witness" instruction for abuse of discretion. *United States v. Arias–Santana*, 964 F.2d 1262, 1268 (1st Cir.1992); *United States v. Martinez*, 922 F.2d 914, 924 (1st Cir.1991).

B. *Analysis.*

■ The Supreme Court announced the underlying rationale for "missing witness" instructions in *Graves v. United States*, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893): "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Id.* at 121, 14 S.Ct. at 41. A "missing witness" instruction may be warranted when the uncalled witness is either in the "exclusive control" of, or is "peculiarly available" to the other party. *See Arias–Santana*, 964 F.2d at 1268; *United States v. St. Michael's Credit Union*, 880 F.2d 579, 597 (1st Cir.1989); *United States v. Ariza–Ibarra*, 651 F.2d 2, 16 (1st Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). Such an instruction, however, should not be given if the uncalled witness is equally available to both parties. *St. Michael's Credit Union*, 880 F.2d at 597; *Ariza–Ibarra*, 651 F.2d at 17; *see also, United States v. Brooks*, 928 F.2d 1403, 1412 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991); *United States v. Nichols*, 912 F.2d 598 (2d Cir.1990); *United States v. Burton*, 898 F.2d 595, 597 (8th Cir.1990); *Wilson v. Merrell Dow Pharmaceuticals, Inc.*, 893 F.2d 1149, 1151 (10th Cir.1990); Edward J.

Devitt & Charles B. Blackmar, Federal Jury Practice and Instructions § 14.15 (4th ed. 1992).[6]

■ We have held, however, that there may be situations where a witness's mere physical availability may not be enough to render that witness equally available to both parties. In *United States v. Johnson*, 467 F.2d 804 (1st Cir.1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973), we stated that:

> A witness's availability is not to be decided on the basis of his physical presence in the court room or his accessibility by writ of habeas corpus or by subpoena. We hold rather that a witness's practical and legal availability is to be determined on the basis of his disposition and relationship toward the parties.... Where the court finds that an uncalled witness is clearly favorably disposed toward one of the parties, an instruction, if requested, may properly be given that the jury may draw an inference favorable to the other party.

*Id.* at 809 (citation omitted). A "missing witness" instruction is therefore proper either when a witness is, in fact, not physically available to the party seeking the instruction, or, when an uncalled, but physically available, witness is so "clearly favorably disposed" to the other party that the witness is considered to be legally unavailable. *St. Michael's Credit Union*, 880 F.2d at 597; *Ariza–Ibarra*, 651 F.2d at 16; *Johnson*, 467 F.2d at 890.

■ In this case, even though Porter may have been "favorably disposed" toward the government, given his status as a paid government informant, we hold that it was not an abuse of discretion to deny Spinosa's request for a "missing witness" instruction. We do so for three reasons. First, Spinosa has offered no evidence to

---

6. § 14.15 Absence of Witness

If it is peculiarly within the power of either the government or the defense to produce a witness who could give relevant testimony on an issue in the case, failure to call that witness may give rise to an inference that this testimony would have been unfavorable to that party. *No such conclusion should be drawn by you, however, with regard to a wit-*ness *who is equally available to both parties* or where the testimony of that witness would be merely cumulative.

The jury must always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

*Id.* (Emphasis added.)

support his contention that Porter was not equally available to the defense because of his status as a paid government informant. There is no *per se* rule that paid government informants are presumed to be so clearly favorably disposed to the government that they are not available to criminal defendants. The defense team knew Porter's identity and how to locate him. Indeed, defendant's counsel met with Porter during trial preparations. Spinosa offered no evidence that Porter would not speak to him or that he was otherwise uncooperative.[7]

Second, the government did not interfere with any effort by Spinosa to produce Porter at trial. In fact, the government offered to help Spinosa produce Porter. Spinosa declined to take advantage of the government's offer. There is no evidence that the prosecution attempted to keep Porter out of Spinosa's reach.

Third, Spinosa's tactics with regard to Porter smack of gamesmanship. He had contact with Porter and yet he made no effort to subpoena Porter to testify at trial, and offers no explanation for his failure to do so. It is apparent that Spinosa sought the dual benefit of avoiding Porter's potentially harmful testimony at trial, while at the same time obtaining the advantage of a negative inference drawn by the jury about the government's failure to produce Porter as a witness. While this may make for clever trial tactics, the trial court was under no obligation to grant the motion for a "missing witness" instruction. As the Second Circuit has pointed out, "courts have been reluctant to find a witness practically unavailable when it appears that the defense has no real interest in calling the witness to the stand, but merely is engaged in a form of gamesmanship in an effort to obtain a missing witness charge." *United States v. Torres*, 845 F.2d 1165, 1170 (2d Cir.1988) (citing *United States v. Bramble*, 680 F.2d 590, 592 (9th Cir.), *cert. denied*, 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982)). We agree, and hold that the trial

court did not err in denying Spinosa's motion for a "missing witness" instruction.

Affirmed.

---

**7.** Of course, we do not hold that such evidence, by itself, would have warranted granting Spinosa's motion. A witness is not "peculiarly available" to the government simply because the witness chooses not to discuss the case with the defense. *United States v. Rollins*, 862 F.2d 1282, 1298 (7th Cir.1988), *cert. denied*, 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989).