23 F.3d 404
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Peter Prela RUKAJ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mirash VUKEL, Defendant-Appellant.
 Nos. 92-5712, 92-5733.
 United States Court of Appeals, Fourth Circuit.
 Argued March 11, 1994.
Decided May 5, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis III, District Judge. (CR-92-170-A)
 Gino Josh Singer, New York, NY, for appellant Rukaj.
 Justin Michael Miller, Jacobovitz, English & Smith, Alexandria, VA, for appellant Vukel.
 Michael Timothy Dougherty, Special Asst. U.S. Atty. (Helen F. Fahey, U.S. Atty., on brief), Alexandria, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS, LUTTIG and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Defendants Peter Rukaj and Mirash Vukel were convicted for conspiring to distribute heroin in violation of 21 U.S.C. Sec. 846. Rukaj was also convicted for possession with intent to distribute heroin in violation of 21 U.S.C. Sec. 841(a)(1). They appeal their convictions, alleging that the district court erred in (1) denying their request for a missing witness instruction, and (2) denying their motion for a mistrial after concluding there was no Brady v. Maryland violation. In addition, Rukaj and Vukel claim the district court enhanced their sentences in violation of the Due Process and Double Jeopardy Clauses. We affirm as follows.
 
 
 2
 * On April 1, 1992, Rukaj and Vukel, accompanied by Anton Malaj and George Pelensky, travelled in a rental limousine from New York City to Alexandria, Virginia, to sell a large quantity of heroin to Patrick Dunn. Unbeknownst to the four men, Dunn was an undercover agent with the Drug Enforcement Agency (DEA). According to Pelensky (the only one of the four to testify at trial), the heroin was supplied by Rukaj. Pelensky did not know the heroin was actually in the limousine because Rukaj told him it had been shipped to Washington, D.C.
 
 
 3
 Shortly after the four men left New York, Pelensky asked to be let out of the limousine because he did not want to go through with the drug transaction. According to Pelensky, Rukaj then stuck a .38 revolver under his chin and told him that he or his family would "pay for it" if anything went wrong. JA 110-11. Vukel also made similar threats against Pelensky and displayed a 9 millimeter automatic pistol.
 
 
 4
 The four arrived at a Howard Johnson's in Alexandria about 4:00 p.m. that day. At Rukaj's direction, Pelensky called Dunn and waited outside the hotel for his arrival. When Dunn arrived, Pelensky went inside and informed Rukaj, who was waiting in a room with Malaj. Rukaj once again stuck the .38 revolver under Pelensky's chin and threatened him. Rukaj, Pelensky and Malaj then went outside and walked toward Dunn's car in the hotel parking lot. (The fourth man, Vukel, stayed in the limousine.) As Dunn got out of his car, several DEA agents and local law enforcement officials converged on the group. Rukaj ran away, but after a chase of several hundred yards, he was captured. The four men were placed under arrest. Shortly thereafter, a .38 revolver was found in the path where Rukaj had fled. In addition, a DEA agent recovered a 9 millimeter pistol during a search of the limousine. The officers also seized 235.2 grams of heroin.
 
 
 5
 Pelensky began cooperating with the government immediately after his arrest, and on April 10, 1992, he pled guilty to a one-count information charging him with conspiracy. On April 22, 1992, Rukaj, Vukel and Malaj were indicted. The three were charged with conspiring to distribute and possession with intent to distribute 100 or more grams of heroin under 21 U.S.C. Secs. 846 and 841(a)(1). Rukaj and Vukel also were charged under 18 U.S.C. Sec. 924(c)(1) with possession of a firearm during the commission of a drug offense. In addition, Rukaj was charged under 18 U.S.C. Sec. 922(g)(1) with possession of a firearm by a convicted felon.
 
 
 6
 On July 2, 1992, Malaj pled guilty to the conspiracy charge and agreed (in a plea agreement) to cooperate with the government. On July 7, 1992, a jury trial commenced against Rukaj and Vukel. The government called Pelensky as a witness. Neither the government nor the defense called Malaj, who had been subpoenaed by the government and was present in the courthouse during trial.
 
 
 7
 Before the charge conference, Rukaj and Vukel moved for dismissal of the indictment, alleging the government had withheld excul patory evidence. In particular, defendants claimed the government knew Malaj had told his attorney that he did not see any guns during the limousine ride from New York to Alexandria and that this statement had not been disclosed. After a hearing, the district court denied defendants' motion. In addition, at the charge conference, defendants requested a missing witness instruction in relation to Malaj, and the request was refused.
 
 
 8
 Rukaj was convicted on the conspiracy and possession with intent to distribute charges and acquitted on the firearms charges. Vukel was convicted on the conspiracy charge and acquitted on the other charges. At sentencing, the district court, pursuant to U.S.S.G. Sec. 2D1.1(b)(1), enhanced by two levels each defendant's base offense level for possession of a dangerous weapon.
 
 
 9
 Defendants (Rukaj and Vukel) appeal, alleging the district court erred in (1) denying their request for a missing witness instruction, and (2) denying their motion for mistrial after concluding there was no Brady v. Maryland violation. In addition, they claim the district court enhanced their sentences in violation of the Due Process Clause and the Double Jeopardy Clause.
 
 II
 
 10
 Although the government subpoenaed Malaj and told the jury during its opening statement that Malaj would testify, the government did not call him as a witness. Neither did the defense. At the charge conference, defendants requested a missing witness instruction and the request was refused. A trial court's refusal to grant a missing witness instruction is reviewed for abuse of discretion. United States v. Hoensheidt, 7 F.3d 1528, 1531 (10th Cir.1993). We conclude the district court did not abuse its discretion.
 
 
 11
 A missing witness instruction may be given if the failure of a party to call a witness permits an inference that the witness's testimony would be unfavorable to the party's case. See 2 Charles Wright, Federal Practice and Procedure Sec. 489 (1982). To qualify for such an instruction, two requirements must be met. First, it must be shown that the party failing to call the witness has it peculiarly within its power to produce the witness. United States v. Brooks, 928 F.2d 1403, 1412 (4th Cir.), cert. denied, 112 S.Ct. 140 (1991); United States v. Rollins, 862 F.2d 1282, 1297 (7th Cir.1988), cert. denied, Slaughter v. United States, 490 U.S. 1074 (1989); Graves v. United States, 150 U.S. 118, 121 (1893). This requirement can be satisfied by showing either (1) that the witness is physically available only to the other party, or (2) that, because of the witness's relationship with the other party, the witness "pragmatically" is only available to that party. Rollins, 862 F.2d at 1297; United States v. Spinosa, 982 F.2d 620, 632 (1st Cir.1992) (missing witness instruction proper when the witness is "so 'clearly favorably disposed' to the other party"); see, e.g., United States v. Mahone, 537 F.2d 922, 926-27 (7th Cir.), cert. denied, 429 U.S. 1025 (1976). Second, the witness's testimony must "elucidate" issues important to the trial, as opposed to being irrelevant or cumulative. Brooks, 928 F.2d at 1412; Graves, 150 U.S. at 121; Rollins, 862 F.2d at 1298; United States v. Johnson, 467 F.2d 804, 808 (1st Cir.1972), cert. denied, 410 U.S. 909 (1973).
 
 
 12
 Defendants argue that, although Malaj was physically present during the trial, "pragmatically" he was not equally available to both sides. Specifically, defendants contend (1) Malaj's plea agreement provided an incentive for him to favor the government, (2) Malaj refused to be interviewed by defense counsel,[1] and (3) Malaj would have invoked his Fifth Amendment privilege against self-incrimination had defendants called him to testify.
 
 
 13
 First, a witness is not unavailable merely because he cooperates with the government under a plea agreement. See Rollins, 862 F.2d at 1298 (fact that witness was informant does not make him pragmatically unavailable). By itself, a plea agreement is insufficient to show that a witness who entered the agreement is "clearly favorably disposed," Spinosa, 982 F.2d at 632, toward the government.
 
 
 14
 Second, "[e]ven where a witness entirely refuses to discuss a case with the defense, a missing witness instruction may be appropriately denied." United States v. Keplinger, 776 F.2d 678, 702 (7th Cir.1985), cert. denied, 476 U.S. 1183 (1986); Spinosa, 982 F.2d at 633 n. 7 ("[a] witness is not 'peculiarly available' to the government simply because the witness chooses not to discuss the case with the defense").
 
 
 15
 Third, as for the possibility that Malaj might have invoked the Fifth Amendment, the district court was correct in declining defendants' invitation to engage in speculation. There is no evidence that Malaj would have invoked his Fifth Amendment privilege. Moreover, defendants failed to call Malaj despite the district court's offer to reopen the case to allow them to do so. Defendants thus should not be permitted to speculate whether Malaj would have refused to testify. Cf. Hoenscheidt, 7 F.3d at 1531; Spinosa, 982 F.2d at 633. Regardless, "[a] witness' decision to invoke his fifth amendment privilege against testifying makes him neither peculiarly available to the government nor within the government's exclusive control." United States v. St. Michael's Credit Union, 880 F.2d 579, 598 (1st. Cir.1989); cf. Brooks, 928 F.2d at 1412 (missing witness instruction only warranted when witness is not equally available).
 
 
 16
 In sum, we conclude that defendants did not show that Malaj was peculiarly available to the government. Therefore, the district court did not abuse its discretion when it refused to give a missing witness instruction.[2]
 
 III
 
 17
 In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that due process requires the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987). Before the charge conference, defendants moved for a mistrial, alleging that the government had withheld exculpatory evidence in violation of the Brady rule. Specifically, Rukaj's attorney had learned that Malaj told his attorney he had not seen firearms displayed during the limousine ride from New York to Alexandria, and that the government was aware of this communication.
 
 
 18
 The district court held a hearing on the Brady issue. The court examined DEA Agent Charles Gardner, who was present when government officials interviewed Malaj several days before the trial (after Malaj had entered into a plea agreement). Agent Gardner testified as follows about the interview: Malaj explained that he had lied to his attorney when he told him he did not see weapons displayed during the trip. Malaj told the officials he saw a .38 revolver and a 9 millimeter pistol in the limousine, and that Rukaj had brought the weapons into the limousine. Further, during the trip to Alexandria, Malaj saw Rukaj threaten Pelensky by placing the revolver underneath his chin. Malaj did not see the 9 millimeter pistol after it was brought into the limousine and did not see Vukel display that weapon during the trip. However, Malaj explained that he may not have seen Vukel with the pistol because he was asleep for a good portion of the trip.
 
 
 19
 The district court found Agent Gardner's testimony to be credible. The court then offered to reopen the case to allow defendants to call Malaj to testify, but defendants declined the invitation. The court concluded that the statements made by Malaj to his attorney and at the interview were not Brady material. We agree.
 
 
 20
 The substance of the alleged exculpatory material relates to charges (possession of firearms) on which defendants were acquitted. Nevertheless, defendants argue that Malaj's statements were exculpatory insofar as they were inconsistent with Pelensky's trial testimony. "Impeachment evidence as well as exculpatory evidence, of course, falls within the principles of Brady." Jean v. Rice, 945 F.2d 82, 87 n. 9 (4th Cir.1991)(citing Giglio v. United States, 405 U.S. 150, 154-55 (1972)); United States v. Bagley, 473 U.S. 667, 676 (1985).
 
 
 21
 We do not see how Malaj's statements were anything but consistent with Pelensky's testimony. Pelensky testified that there was a 9 millimeter pistol and a .38 revolver in the limousine. Malaj confirmed this. Pelensky said Rukaj displayed a .38 revolver and threatened Pelensky by placing the revolver under his chin. Malaj confirmed this. Although Malaj did not confirm that Vukel displayed the 9 millimeter pistol while verbally threatening Pelensky, Malaj did not contradict Pelensky's testimony: Malaj did not say that Vukel had not threatened Pelensky, but rather that he did not see Vukel make any threats. Malaj explained that he may not have seen Vukel display the pistol because he was asleep for a good portion of the trip. And, Vukel's mere display of the pistol was more subtle than Rukaj's sticking a revolver under Pelensky's chin.
 
 
 22
 We hold that there was no Brady violation. Malaj's statements to the government "did not contradict any evidence offered by the prosecutor, and [were] largely cumulative of" Pelensky's testimony. United States v. Agurs, 427 U.S. 97, 114 (1976); see United States v. Breit, 767 F.2d 1084, 1091-92 (4th Cir.1985). Moreover, Malaj's statements to the government were hardly exculpatory; they supported the government's position that there were firearms present during the commission of the offense.[3]
 
 IV
 
 23
 As noted above, both defendants were acquitted on the firearms charges. Nevertheless, the district court enhanced by two levels each defendant's base offense level pursuant to U.S.S.G.Sec. 2D1.1(b)(1), which says: "If a dangerous weapon (including a firearm) was pos sessed, increase [the base offense level] by 2 levels." Defendants argue that it violates both the Due Process and Double Jeopardy Clauses of the United States Constitution to enhance a defendant's sentence on the basis of conduct for which he was acquitted.
 
 
 24
 Defendants concede that we have rejected this very same argument on numerous occasions. See, e.g., United States v. Nelson, 6 F.3d 1049, 1057 (4th Cir.1993), petition for cert. filed, U.S.L.W. (U.S. March 2, 1994) (No. 93-8210); United States v. Romulus, 949 F.2d 713, 716-17 (4th Cir.1991), cert. denied, 112 S.Ct. 1690 (1992); United States v. Johnson, 943 F.2d 383, 386 (4th Cir.), cert. denied, Bates v. United States, 112 S.Ct. 667 (1991); United States v. Isom, 886 F.2d 736, 738 (4th Cir.1989). Because we are bound by these decisions, we cannot say the district court erred in enhancing their sentences.
 
 V
 
 25
 We affirm the district court.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Defense attorneys claimed below that during a trial recess they approached Malaj in the witness room, but he refused to talk with them because the prosecutor "was shaking his head no, signalling to Mr. Malaj not to speak with us." JA 345-46. The prosecutor vehemently denied this allegation, made during the charge conference when defendants' request for a missing witness instruction was being considered
 
 
 [2]
 We also note that defendants were permitted to argue to the jury that it should draw an adverse inference from the government's failure to call Malaj as a witness. See United States v. Torres, 845 F.2d 1165, 1170 (2nd Cir.1988)(even if the witness was clearly favorably disposed toward the government and therefore pragmatically unavailable to the defense, failure to give instruction was not reversible error because the district court permitted defense counsel to argue the inference to the jury in summation)
 
 
 [3]
 Having held that Malaj's statements were not Brady material, we reject appellants' claim that Agent Gardner's destruction of his notes from the Malaj interview constitutes a failure to preserve Brady material. Similarly, we need not address the government's alternative arguments that the evidence was available to the defense from other sources, see Epperly v. Booker, 997 F.2d 1, 9-10 (4th Cir.), cert. denied, 114 S.Ct. 611 (1993), that the evidence was discovered in time for effective use at trial, see United States v. Russell, 971 F.2d 1098, 1112 (4th Cir.1992), cert. denied, 113 S.Ct. 1013 (1993), and that the evidence was not material, see United States v. Bagley, 473 U.S. at 678