UNITED STATES of America, Appellee,

v.

Julio Ernesto ARIAS–SANTANA,
Defendant, Appellant.

No. 91–1914.

United States Court of Appeals,
First Circuit.

Heard April 7, 1992.

Decided June 4, 1992.

Ralph J. Perrotta, Washington, D.C., for defendant, appellant.

Zechariah Chafee, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before BREYER, Chief Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Julio Ernesto Arias–Santana appeals his convictions on two counts of distributing cocaine near an elementary school, *see* 21 U.S.C. §§ 841(a)(1), 860(a), and one count of conspiring to possess cocaine with intent to distribute, *see* 21 U.S.C. § 846. Appellant challenges several evidentiary rulings and the instructions to the jury. We affirm.

I

BACKGROUND

On February 6, 1991, Woonsocket Police Detective Warot, acting undercover, went

to a second-floor apartment in Woonsocket, Rhode Island. After admitting Warot to the apartment, appellant and codefendant Leonidas Diaz sold him cocaine. On the following day, Warot filed a police report containing a detailed physical description of appellant and codefendant Diaz. On March 14, 1991, another undercover officer, Detective Dubois, engaged in a similar cocaine transaction with appellant and Diaz at the same apartment.

The next day, the police obtained a warrant to search the apartment. A third officer, Detective McMillan, participated in the execution of the warrant. Shortly after the search party knocked and announced its presence, McMillan heard people running inside the apartment. The officers broke down the heavily reinforced front door with a battering ram and found four persons inside the apartment: a "maintenance man," appellant, appellant's girlfriend, and codefendant Diaz.[1]

Within minutes after the occupants were handcuffed and placed face down on the kitchen floor, Detectives Warot and Dubois arrived at the apartment and identified appellant and Diaz as the persons from whom they had purchased cocaine on February 6 and March 14.[2] Detectives Warot and Dubois filed reports detailing their March 15 observations and identifications of appellant shortly after his arrest. At appellant's detention hearing on April 1, 1991, Warot testified to his March 15 identification of appellant. Following their five-day jury trial, appellant and Diaz were convicted of conspiring to distribute cocaine and distributing cocaine within 1000 feet of a school.

## II

## DISCUSSION

### A. *Admissibility of Police Records*

The district court allowed Detective Warot to read to the jury the detailed physical

1. The maintenance man and appellant's female friend were released.

2. No contraband or drug paraphernalia were found in the apartment. Nevertheless, having

description of appellant contained in the February 7 police report filed by Warot following the first undercover drug buy at the apartment on February 6. *See* Fed. R.Evid. 803(8)(B) (statements by police officers normally constitute inadmissible hearsay in a criminal case). Even though explicit reference was made to the February 7 police report during codefendant Diaz's cross-examination of Warot, which clearly opened the door to the introduction of those portions of the report that described Diaz, appellant contends that it was improper to admit the report against him since he had avoided any mention of the February 7 report in cross-examining Warot. *See, e.g., United States v. White,* 887 F.2d 267, 270 (D.C.Cir.1989) ("The prosecution may not gain, through the device of a joint trial, admission against one defendant of otherwise inadmissible evidence on the happenstance that the door to admitting the evidence has been opened by a codefendant").

We review evidentiary rulings for abuse of discretion, *see United States v. Abreu,* 952 F.2d 1458, 1467 (1st Cir.1992); *United States v. Newton,* 891 F.2d 944, 946 (1st Cir.1989), but may affirm a district court decision on any ground supported by the record. *See United States v. Mendoza–Acevedo,* 950 F.2d 1, 3 (1st Cir.1991). As a general rule, police reports are inadmissible in a criminal case when offered by the prosecution. *United States v. DePeri,* 778 F.2d 963, 976 (3d Cir.1985), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 *and* 476 U.S. 1159, 106 S.Ct. 2277, 90 L.Ed.2d 720 (1986); *United States v. Grady,* 544 F.2d 598, 604 (2d Cir.1976). Nonetheless, the Federal Rules of Evidence permit a consistent prior statement by a trial witness to be admitted into evidence if "offered to rebut an *express or implied charge against the witness of recent fabrication* or improper influence or motive." Fed.R.Evid. 801(d)(1)(B) (emphasis added).

observed running water in the bathroom lavatory, the officers suspected that evidence might have been destroyed during the course of their forcible entry into the apartment.

■ On direct examination, Detective Warot testified that he returned to the apartment on March 15, the day the search warrant was executed, and identified appellant as one of the persons from whom he had purchased cocaine on February 6. On cross-examination by appellant's counsel, Warot testified that appellant, who was placed in a prone position on the kitchen floor immediately after his arrest, was forced to turn his face toward Warot to permit an identification. Warot was then confronted with his purportedly "inconsistent" sworn statement at appellant's detention hearing on April 1, 1991, *see* Fed. R.Evid. 801(d)(1)(A), which made no mention that Warot had observed appellant's face during the March 15 identification. Later in the trial, while cross-examining Warot, counsel to codefendant Diaz read into evidence a redacted version of the physical description of Diaz contained in Warot's February 7 report. On re-direct examination by the government, Warot read the physical description of appellant contained in the February 7 police report. Appellant's objection to the admission of the February 7 police report was overruled on the ground that "the reports were gone into on cross-examination."

Quite apart from codefendant Diaz's direct use of the February 7 report, appellant's cross-examination independently raised an implied charge of recent fabrication by Detective Warot. In attempting to establish that Warot had not observed appellant's face on March 15, appellant's cross-examination invited the jury to infer that Warot identified and arrested appellant on March 15 merely because appellant happened to be in the apartment at the time of the raid and without regard to whether appellant was the same person from whom Warot bought cocaine at the apartment on February 6. To rebut the implied charge of recent fabrication, the government introduced the earlier physical description contained in Warot's February 7 report, in an effort to demonstrate a physical likeness between the individual from whom Warot bought cocaine on February 6 and the individual arrested on March 15. The challenged evidence ultimately was designed to diminish the likelihood that Warot falsified the identification and description in the March 15 report, since there would have been little need to do so in light of its similarity to the information in the February 7 report. As appellant opened the door, he cannot be heard to complain that the invitation was accepted by the prosecutor.

### B. *Witness Sequestration Agreement*

Appellant contends that the government orally agreed, without the imprimatur of the court, to sequester all witnesses at trial, but violated its agreement when it permitted Detective McMillan to consult with Detective Dubois. According to appellant, Dubois, who had already testified, "coached" McMillan to testify that appellant had turned his face toward Dubois and Warot at the time of their identifications on March 15. Appellant argues that the district court should have permitted a *voir dire* examination to ascertain the exact terms of the alleged oral sequestration agreement in order to determine an appropriate sanction (the exclusion of the assertedly "collusive" testimony or the declaration of a mistrial) for its violation.

■ We normally review the denial of a request for the exclusion of evidence, or of a motion for mistrial, under the same "abuse of discretion" standard. *See, e.g., Abreu,* 952 F.2d at 1467 (evidentiary rulings); *United States v. Castiello,* 915 F.2d 1, 3 (1st Cir.1990) (mistrial), *cert. denied,* —— U.S. ——, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991). As appellant inexplicably postponed his request for a *voir dire* examination and his motion for mistrial until *after* the district court had denied his motion for judgments of acquittal at the conclusion of the government's case-in-chief, the witness sequestration claim was waived. *See, e.g., United States v. Benavente Gomez,* 921 F.2d 378, 385–86 n. 5 (1st Cir.1990) (absent a demonstrated justification for delay, claim of error in admission of evidence will be deemed waived, and hence subject to plain error review, where opposition is withheld until *all* evidence is in); *United States v. Rivera–Santiago,* 872

F.2d 1073, 1085 (1st Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). We therefore review these claims for plain error.

 Even in the face of an established violation of a *court-ordered* witness sequestration order, the sanction determination is committed to the sound discretion of the trial court. *See United States v. Rossetti,* 768 F.2d 12, 16 (1st Cir.1985). Two sound reasons support the district court's decision not to exclude McMillan's testimony. First, appellant proffered insufficient evidence that Detective McMillan violated any private sequestration agreement between appellant and the government. McMillan repeatedly testified on cross-examination that he and Dubois engaged in nothing more than a general discussion of the government's "evidence," and he specifically denied having had any conversation concerning the substance of Dubois' previous testimony. Second, the cases relied on by appellant concerned witness sequestration *orders* entered pursuant to Evidence Rule 615, which provides: "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion...." Fed.R.Evid. 615. It has been held that a criminal defendant's request for a witness sequestration order narrowly circumscribes the trial court's discretion. *See United States v. Ell,* 718 F.2d 291, 292 (9th Cir.1983) (under Rule 615, witness sequestration order is a matter of right); *cf. United States v. Machor,* 879 F.2d 945, 953 (1st Cir.1989), *cert. denied,* 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1070 (1990) (Rule 615 affords trial court minimal discretion and "requires" court to sequester on request of a party, unless witness falls within enumerated exceptions to rule, in which

case rule normally prohibits sequestration). In addition to ordering their exclusion from the courtroom, the trial court has broad discretion to direct witnesses not to discuss their testimony outside the courtroom. *See Geders v. United States,* 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976).

 Appellant chose to bypass the prospect of a *court-ordered* witness sequestration under Rule 615, however, then tardily sought retroactive relief from an alleged violation of a private understanding which he was unable to establish. In these circumstances, a defendant relies on undocumented understandings at his peril, and the district court quite reasonably decided not to interrupt the trial to engage in an extended *voir dire* where it was likely that the alleged scope of the sequestration agreement was unprovable.[3] *See Rossetti,* 768 F.2d at 16 (witness discussions not improper where "neither the prosecution nor the defense requested the court to instruct any witness not to discuss his testimony with another potential witness during the trial."); *see also United States v. De Jongh,* 937 F.2d 1, 3 (1st Cir.1991) (absent formal request for witness sequestration order, trial court properly refused to strike testimony of witness who consulted with prosecutor prior to defendant's cross-examination of witness).[4] We find no plain error.

### C. *Sixth Amendment Right of Confrontation*

 Appellant contends that he was deprived of his Sixth Amendment right to confront the witnesses against him when the district court refused to allow him to cross-examine the landlord of the apartment. After the landlord was called and examined on direct by codefendant Diaz,

---

3. The government concedes that it agreed to bar witnesses from the courtroom prior to their testimony, but denies any agreement that government witnesses would not discuss the case *outside the courtroom.*

4. In addition, even if a *voir dire* examination somehow were to have disclosed a violation of a private agreement to preclude witness discussions outside the courtroom, it would have been

left to the discretion of the trial court whether to allow the jury to evaluate the credibility of McMillan's testimony in light of any out-of-court discussions with Dubois. *See Rossetti,* 768 F.2d at 16 (testimony not automatically excluded for violating witness sequestration *order;* appropriate sanction is within sound discretion of trial court); *United States v. Arruda,* 715 F.2d 671, 684 (1st Cir.1983) (same).

appellant attempted to elicit the identity and whereabouts of the maintenance man who was hired by the landlord and was in the apartment at the time appellant was arrested on March 15, 1991.

The Sixth Amendment right of confrontation includes "an adequate opportunity to cross-examine *adverse* witnesses." *United States v. Berrio–Londono*, 946 F.2d 158, 160 (1st Cir.1991) (quoting *United States v. Owens*, 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988)) (emphasis added); *see also United States v. Campbell*, 935 F.2d 39, 43 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 348, 116 L.Ed.2d 287 (1991) (statement is inculpatory, and triggers Sixth Amendment right of confrontation, only if *"fairly understood* to incriminate the accused.") (emphasis added); *United States v. Crockett*, 813 F.2d 1310, 1314 (4th Cir.), *cert. denied*, 484 U.S. 834, 108 S.Ct. 112, 98 L.Ed.2d 71 (1987) ("animating purposes" of Sixth Amendment suggest that "adversity" of witness be evaluated in light of *actual content* of testimony, rather than by "formalistic categories" as to which party called witness); *cf. United States v. Porter*, 764 F.2d 1, 16 (1st Cir.1985) (right of confrontation not actuated unless codefendant's extrajudicial statement suggests defendant's participation in offense). "The purpose of protecting the right to cross-examine is to afford the defendant an opportunity to impeach the credibility of a witness and to explore the witness' motives and biases." *Berrio–Londono*, 946 F.2d at 160.

The landlord testified that neither the appellant nor Diaz was a tenant, thereby intimating that they may have been innocent visitors to the apartment at the time of the raid. The landlord testified that the maintenance man was hired to repair the plumbing in the apartment, thus advancing a plausible explanation to counteract the officers' testimony that the running water in the bathroom may have been related to an attempt to destroy contraband as the search party was forcing its way through the front door. *See supra* note 2. Finally, the landlord contradicted the officers' testimony that the front door had been reinforced to hinder forcible entry.

Appellant's attempt to elicit information from the landlord was not aimed at impeaching the landlord or any government witness. Rather, appellant sought information that might have led to the discovery of evidence (favorable or unfavorable) plainly available to appellant prior to trial.[5] Appellant was not entitled to postpone pretrial discovery until trial under the guise of a claimed right to confront a witness whose testimony was not adverse to appellant.[6]

### D. *Denial of Requested Jury Instructions*

The district court refused three jury instructions requested by appellant: (1) a "missing witness" instruction; (2) a cautionary instruction to scrutinize the out-of-court identifications of appellant by Detectives Warot and Dubois; and (3) a cautionary instruction that the jury consider its verdicts on the charges against appellant independently of its verdicts as to Diaz.

---

5. Appellant argues that the landlord was an "adverse" witness because Diaz's counsel, by failing to elicit testimony as to the identity of the maintenance man, implicitly supported the government's position that the "missing witness" was immaterial to the defense. There are two serious flaws in appellant's argument. First, testimony can be characterized as "adverse" only on the basis of what the witness says, or does not say, in response to a particular question. The landlord neither expressed nor implied an opinion as to the materiality of the maintenance man's testimony. Second, the maintenance man's testimony could be material to appellant's case only insofar as it might entitle appellant to obtain a "missing witness" instruction. Since appellant did not establish that the maintenance man was "unavailable" to testify for the defense, however, appellant would not have been entitled to a "missing witness" instruction. *See infra* pp. 1268–69.

6. The district court noted that appellant previously had rested his case without presenting a defense. Appellant even now tenders no contention that he could not have called the landlord as a witness, or that he could not have asked the court to allow him to reopen his defense for that purpose. *See, e.g., United States v. Cohen*, 888 F.2d 770, 775 (11th Cir.1989) (request to reopen case is committed to trial court's sound discretion).

Appellant did not preserve these claims as required under Fed.R.Crim.P. 30, which mandates that objections to jury instructions be asserted *after* the court delivers its charge to the jury but *before the jury retires. See United States v. Wilkinson,* 926 F.2d 22, 26 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991) ("we have repeatedly held, Fed. R.Crim.P. 30 means what it says."); *United States v. Coady,* 809 F.2d 119, 123 (1st Cir.1987) (Criminal rule 30 is "strictly ... applied."); *United States v. Fuller,* 768 F.2d 343, 345 (1st Cir.1985) (same); *cf. El-gabri v. Lekas,* 964 F.2d 1255, 1259 (1st Cir.1991) (requiring strict application of Fed.R.Civ.P. 51, the civil rule counterpart to criminal rule 30). Notwithstanding our unwavering insistence on strict adherence to the literal requirements of Criminal Rule 30, appellant failed to assert any objection to the delivered charge until after the district court had allowed the jury to retire for its deliberations.[7] Accordingly, we review these claims for plain error.

◼ A request for a "missing witness" instruction is entrusted to the discretion of the district court; normally, we review for abuse of discretion. *See United States v. Martinez,* 922 F.2d 914, 924 (1st Cir.1991). The "missing witness" instruction permits the jury to infer from " 'the failure of a party to produce available evidence that would help decide an issue ... that the evidence would be unfavorable to the party to whom it is *available or* whom it would ordinarily be *expected to favor.' " United States v. St. Michael's Credit Union,* 880 F.2d 579, 597 (1st Cir.1989) (quoting 2 Charles A. Wright, *Federal Practice and Procedure* § 489 (1982)) (emphasis added).

◼ The district court denied appellant's request on the ground that there was no evidence as to the maintenance man's availability to testify. Since the substance of the anticipated testimony from the "missing witness" was unknown, appellant had to establish its presumptive advantageousness to the defense by producing competent evidence that the "missing witness" was either "peculiarly available" to the government or within its "exclusive control." *Id.; United States v. Ariza-Ibarra,* 651 F.2d 2, 15–16 (1st Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981); *see also United States v. Rollins,* 862 F.2d 1282, 1298 (7th Cir.) (a witness is not "peculiarly available" to the government simply because the witness has chosen not to discuss the case with the defense), *cert. denied,* 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1988).

The only information relating to availability was that the maintenance man refused to cooperate with the police, and the government concluded that his testimony would not aid its case. However, although appellant was well aware that the maintenance man was in the apartment at the time of his arrest, even now, on appeal, appellant attempts no explanation for the failure to take reasonable efforts to subpoena the "missing witness" to testify for the defense. Nor does he suggest that the government in any way prevented him from identifying or procuring the witness. *See Cameo Convalescent Ctr., Inc. v. Senn,* 738 F.2d 836, 844 (7th Cir.1984) ("justification for the missing witness instruction disminishes [sic] with the availability of the tools of discovery"), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985). There was no error in the denial of a "missing witness" instruction.

◼ Finally, because the jury charge covered the substance of appellant's two remaining requests, we discern no error, plain or otherwise, in the refusal to charge the jury *in haec verba. See United States v. Passos–Paternina,* 918 F.2d 979, 984 (1st Cir.1990) (court need not "instruct the jury in the precise form and language requested"), *cert. denied,* —— U.S. ——,

---

7. We recognize that the district court did not invite objections before the jury retired. Nevertheless, we find no indication in the record that counsel were in any way prevented from interposing objections at the proper time. Before delivering its charge, the district court advised counsel: "You can take an exception and an objection to my instructions after I've given them."

111 S.Ct. 1637, 113 L.Ed.2d 732 and *cert. denied,* —— U.S. ——, ——, 111 S.Ct. 2808, 2809, 115 L.Ed.2d 980, 981 (1991). As concerns appellant's request for a "mistaken identification" instruction, the court adequately apprised the jury of its obligation to adjudge the demeanor, credibility, and reliability of the government witnesses, including the police officers who identified appellant. As for the request that the jury be cautioned to consider their verdicts as to appellant independently of those relating to codefendant Diaz, the court expressly admonished the jury that "[t]he fact that you may find an accused guilty ... should not control your verdicts ... as to the offenses charged against another defendant." The court need have gone no further.

*Affirmed.*