<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

        United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-1274

                         UNITED STATES,

                           Appellee,

                               v.

                       KARLA LEE GRAHAM,
                     A/K/A KARLA ZAHORUIKO,

                     Defendant - Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF NEW HAMPSHIRE

         [Hon. Paul J. Barbadoro, U.S. District Judge]

                      ____________________

                             Before

                     Boudin, Circuit Judge,

Godbold and Cyr, Senior Circuit Judges.

                     _____________________

   Bjorn Lange, Assistant Federal Defender, Federal Defender
Office, for appellant.
   Jean B. Weld, Assistant United States Attorney, with whom
Paul M. Gagnon, United States Attorney, was on brief for appellee.

                      ____________________

                         June 5, 1998
                      ____________________

         GODBOLD, Senior Circuit Judge.  Karla Graham appeals from
her conviction and sentence for making false statements in loan
documents presented to a federally insured bank in violation of 18
U.S.C.  1014.  We affirm both.
              I.  Factual and Procedural History
         The jury was entitled to find the following facts, either
as undisputed or based on sufficient evidence.
         Between 1987 and 1989 Karla Graham worked as a mortgage
account executive for Dime Real Estate Services of New Hampshire
(Dime-NH)a wholly owned subsidiary of Dime Savings Bank of New York
(Dime-NY) that provided residential mortgage loans.  Graham
originated the loans and was paid on commission.  During this time
the bank had a low-documentation lending program that approved loan
applications without verification of income, employment or assets
as long as the borrowers could make a twenty percent down payment
with their own funds.  Graham and her co-defendants found ways to
avoid the down payment requirement and submitted fraudulent loan
applications to the bank's underwriters in Massachusetts (Dime-MA).  
Dime-NY provided the funds for these mortgages, and all mortgages
were eventually assigned to Dime-NY.  Dime-NY is a federally
chartered savings bank with deposits insured by the Federal Deposit
Insurance Corporation (FDIC).
         After a large scale investigation into Dime's operations,
a federal grand jury returned a sixty-count indictment against
Graham and six co-defendants.  Graham was charged in eleven counts
of the indictment.  Two of these counts were severed and later
dismissed by the government.  Graham was tried by a jury on the
remaining counts.  Count 1 charged her with conspiring to make
false statements for the purpose of influencing Dime-NY on loan
applications in violation of 18 U.S.C.  371.  Counts 17 through 26
charged her with knowingly submitting materially false statements
on ten different loan applications, HUD-1 Settlement Statements,
and Fannie May Affidavits for the purpose of influencing Dime-NY in
violation of 18 U.S.C.  1014.  The jury returned a verdict of
guilty on counts 18 and 25 and not guilty on the remaining counts.  
The district court sentenced her to eighteen months imprisonment on
each count to be served concurrently and a term of one year
supervised release.
                 II.  Discussion of the Issues
A.  Selective Prosecution and Conflict of Interest
         Graham asserts that her conviction violated her right to
due process because it was the product of selective prosecution on
the part of the government.  She maintains that the district court
erred in failing to hold an evidentiary hearing on the issue of
selective prosecution.  Graham points to the fact that Dime Bank-
New York was not indicted on criminal charges after it gave a
$2,000,000 donation to a nonprofit housing program in Manchester,
New Hampshire.  She also notes that the U.S. Attorney in charge of
the case resides in the New Hampshire community that received the
donation.  Further complicating this picture is the fact that Dime-
NY was partially owned by the FDIC and that the decision not to
indict the bank came just before a successful public offering of
shares in the bank, thus benefitting the FDIC by ensuring that the
sale would not be marred by threats of future criminal liability.  
By cumulating all of these circumstances, Graham suggests that she
was selectively prosecuted either because she did not have the
wealth to avoid criminal liability through civic contributions or
because a government conflict of interest kept the bank from being
prosecuted.
         An improper selective prosecution arises when a defendant
"has been singled out for prosecution when others similarly
situated have not been prosecuted and the prosecutor's reasons for
doing so were impermissible."  U.S. v. Magana, 127 F.3d 1, 8 (1st
Cir. 1997); see also U.S. v. Peagarcano-Soler, 911 F.2d 833,
837-38 (1st Cir. 1990).  The prosecutor is presumed to have acted
"in good faith for reasons of sound governmental policy."
Peagarcano-Soler, 911 F.2d at 837 (citing U.S. v. Saad, 652 F.2d
1126, 1135 (1st Cir. 1981)).  But if the defendant alleges facts
that tend to show that she has been selectively prosecuted and that
raise a reasonable doubt about the propriety of the government's
purpose, then she is entitled to an evidentiary hearing unless the
government "puts forward adequate countervailing reasons to refute
the charge and . . . the court is persuaded that the hearing will
not be fruitful."  U.S. v. Goldberg, 105 F.3d 770, 776 (1st Cir.
1997) (internal quotations and citations omitted).
         Although Graham may have presented enough evidence to
create a prima facie case of selective prosecution by suggesting
that the bank's monetary charitable contribution precluded its
prosecution, the government refuted this presumption with adequate
reasons for its decisions.  Specifically the government offered a
list of eight factors it considered in its decision not to indict
Dime-NY:  (1) Dime's merger with Anchor in 1995; (2) the fact that
current senior management was not in those positions during the
years of suspected criminal activity; (3) the bank and its
shareholders had suffered significant losses from the fraudulent
conduct of former employees; (4) the newly formed institution had
implemented stringent fraud detection procedures; (5) the
rehabilitative step of contributing $2,000,000 to the Manchester
Neighborhood Housing Services, Inc.; (6) the implementation of the
Dime Borrowers Associations Borrowers Assistance Program II; (7)
payment of $150,000 to the Dime Borrowers Associations; and (8) the
continued cooperation of Dime-NY in the ongoing grand jury
investigation.
         The district court considered this list of factors and
found that it adequately explained the government's actions and
that no evidentiary hearing on the issue of selective prosecution
was needed.  The court further found that the accusations of
government conflict of interest were not substantial enough to
raise any presumption of prosecutorial misconduct.  
         We review a district court's decision not to hold an
evidentiary hearing on selective prosecution for abuse of
discretion.  Goldberg, 105 F.3d at 776 (citing U.S. v. Gary, 74
F.3d 304, 313 (1st Cir.), cert. denied, 116 S. Ct. 2567 (1996)).  
In deciding whether the district court should have granted an
evidentiary hearing on the issue of selective prosecution we are
faced with a "judgment call--tempered on appeal by the deferential
standard of review--as to the force and specificity of the
allegations, the strength of the response, and the likelihood that
a hearing would be helpful."  Goldberg, 105 F.3d at 776 (citing
U.S. v. Lpez, 71 F.3d 954, 963-64 (1st Cir. 1995), cert.
dismissed, 117 S. Ct. 38 (1996)).  In this case the district court
carefully considered both Graham's allegations and the government's
explanation before denying an evidentiary hearing.
         Although the timing of the donation may have created a
reasonable doubt about the propriety of the government's purpose,
we agree that the government adequately refuted the charge so that
a hearing was not necessary.  Furthermore we also agree that
Graham's allegation of conflict of interest concerning the FDIC's
financial interest in the bank does not create a presumption of
improper prosecutorial selection.  We have found no case law to
support the preclusion of the Department of Justice from cases
involving banks in which the FDIC has an interest.  Accordingly, we
find no abuse of the district court's discretion in denying
Graham's request for an evidentiary hearing or in denying her
motion to dismiss.
B.  Sufficiency of the Opening Statement
         Graham contends that she should have been granted a
judgment of acquittal after the government's opening statement
because it failed to point to proof for every element of each count
contained in the indictment.  Graham concedes that the government
did mention proof for the elements of the two counts upon which she
was convicted.  The decision to grant a motion for acquittal after
a prosecutor's opening statement is discretionary and should be
made only where the statement contains a clearly admitted fact that
must defeat its case.  See U.S. v. Ingraldi, 793 F.2d 408, 414 (1st
Cir. 1986); U.S. v. Capocci, 433 F.2d 155, 158 (1st Cir. 1970).
Furthermore, we have held that a district court's denial of a
motion for acquittal on the basis of the government's opening
statement is not reviewable and that any error in this respect can
be raised in a challenge to the sufficiency of the evidence.
Ingraldi, 793 F.2d at 414.
         Graham asserts that the district court erred by failing
to recognize its discretion to grant the motion.  Instead the
district court correctly recognized that it did not have the
discretion to grant a motion for acquittal at the close of the
government's opening statement in this situation.  The prosecutor
admitted no fact that clearly defeated the government's case.  
Failure to outline all of the evidence in the opening statement did
not create a right to an acquittal.  See Ingraldi, 793 F.2d at 414.  
In fact the government does not have an obligation to make any
opening statement.  Id.
         We have no power to review the denial of Graham's motion
for acquittal after the government's opening statement, but even if
we did, we would find that the district court did not err.
C.  Sufficiency of the Evidence
         Graham was convicted of violating 18 U.S.C.  1014, which
makes it unlawful to "knowingly make[] any false statement or
report, or willfully overvalue[] any land, property or security,
for the purpose of influencing in any way the action of . . . any
institution the accounts of which are insured by the Federal
Deposit Insurance Corporation."  18 U.S.C.  1014.  Graham contends
that her conviction was insufficiently supported because the
government failed to prove that she purposefully sought to
influence a federally insured bank.  Dime-NH, out of which Graham
operated, is not insured by the FDIC.  She contends that at the
most, the evidence showed that she intended to influence Dime-NH or
Dime-MA, which approved the mortgage applications.  However Dime-NH
and Dime-MA are wholly owned subsidiaries of Dime-NY, which is a
federally insured institution.  Dime-NY was the entity actually
financing all of Graham's mortgages and all mortgages were
eventually assigned to it.  Nonetheless, Graham asserts that
because she was based in New Hampshire and submitted all of her
documents to the Dime-NH office, the government failed to prove
that her purpose was to influence a federally insured bank.
         Graham's assertion fails for two reasons.  First, this
court has held that "the government does not have to show the
alleged scheme was directed solely toward a particular institution;  
it is sufficient to show that defendant knowingly executed a
fraudulent scheme that exposed a federally insured bank to a risk
of loss."  U.S. v. Brandon, 17 F.3d 409, 426 (1st Cir. 1994)
(holding that "it is also unnecessary for the government to prove
that a defendant knows which particular bank will be victimized by
his fraud as long as it is established that a defendant knows that
a financial institution will be defrauded.") (citing U.S. v. Barakett, 994 F.2d 1107, 1110-11 (5th Cir. 1993); U.S. v. Morgenstern, 933 F.2d 1108, 1114 (2d Cir. 1991)).  In this case as
in Brandon, proof that Graham knew she was defrauding a bank was
sufficient to prove a violation of the statute.
    Second, even if the statute required that the government
prove that Graham knew she was fraudulently influencing a federally
insured bank, the evidence offered by the government was sufficient
to do so.  Graham was a loan originator for Dime-NH, and she had
been sent to training at Dime-NY.  The evidence showed that at this
training she was informed of the history and structure of Dime Bank
and was given instruction on all of its loan programs.  In fact
Graham admitted that she often relied on Dime Bank's size and
prominence to solicit new borrowers.  Given the small size of the
New Hampshire operation, she must have been referring to its
parent, Dime-NY.  Graham was not an unsophisticated private
borrower, but an employee of Dime Bank specifically instructed on
how the loan process worked.  This circumstantial evidence was
sufficient to prove that she understood that Dime-NY ultimately
provided the funding for the loans although they originated in New
Hampshire and were approved by Dime-MA.
    The government offered sufficient evidence to support
Graham's convictions under 18 U.S.C.  1014.
D.  The Court's Questioning of the Witnesses
    Graham contends that the trial court's questioning of
certain witnesses deprived her of a fair trial and created
prejudice in favor of the government.  Because Graham failed to
contemporaneously object to the court's comments, we review the
district court's questioning for plain error.  Fed. R. Crim. P.
52(b).
    "A trial judge retains the common law power to question
witnesses and to comment on the evidence."  U.S. v. Gonzlez-
Soberal, 109 F.3d 64, 72 (1st Cir. 1997)(citations omitted).  After
reviewing the instances of which Graham complains we find no error
on the part of the district court.  At most, the court sought to
clarify testimony given by the witnesses in question and helped to
move the proceedings along in an orderly fashion.  Considering the
wide latitude granted a trial judge in managing a trial, we find no
error so obvious that it could rise to the level of substantial and
fundamental prejudice required by plain error review.  See U.S. v. Ortiz, 23 F.3d 21, 26 (1st Cir. 1994) (discussing plain error
standard of review).
E.  Loss Calculation for Sentencing
    Although the two counts on which Graham was convicted
involved no loss to the victim, she was sentenced based on related,
acquitted conduct after the district court found by a preponderance
of the evidence that she had participated in a conspiracy that
resulted in a loss of $1.46 million to the victim.  This loss
resulted in a total offense level of 17 which imposes a sentencing
range of 24-30 months.  After Graham pointed out that the loss
attributed to her was substantially higher than the loss attributed
to other similarly situated defendants who had cooperated with the
government, the government recommended a downward departure for
Graham on the ground that the loss figure overstated her
culpability.  The district court agreed and granted Graham a two-
level downward departure resulting in a sentence of 18 months on
each count to be served concurrently.  
    Graham contends that the disparity in loss calculations
violated her right to due process and equal protection because it
was the result of sentencing factor manipulation.  In response to
the district court's questioning on this issue, the government
explained that any disparity was the result of early guilty pleas
and cooperation agreements by other defendants.  The district
court accepted this explanation and Graham did not specifically
object to this ruling or ask for an evidentiary hearing on the
issue.  We find no plain error in the district court's decision.
    Even assuming that Graham could prove that the government
improperly manipulated her loss calculation, the district court's
downward departure remedied her grievance.  "[W]here government
agents have improperly enlarged the scope or scale of the crime,
the sentencing court 'has ample power to deal with the situation
. . . by departing from the [guideline sentencing range].'"  U.S.v. Montoya, 62 F.3d 1, 3 (1st Cir. 1995) (quoting U.S. v. Connell,
960 F.2d 191, 196 (1st Cir. 1992)).  To the extent that Graham's
appeal suggests that the departure was inadequate, absent an error
of law this court has no jurisdiction to consider the extent of a
permitted departure.  U.S. v. Webster, 54 F.3d 1, 4 (1st Cir.
1995).  We find no such error of law.

                        III. Conclusion
    We AFFIRM Graham's conviction and sentence under 18
U.S.C.  1014.

</body>

</html>